The next matter is Trinity Industries v. Chicago Bridge & Iron Company. This is new. May it please the Court. My name is Heather New for Appellants, Trinity Industries, and I'd like to reserve three minutes for rebuttal. Granted. This case involves a district court's error in holding that Trinity was barred from recovering contribution and cost recovery under both AB&I's 71-year history of polluting the land that is now owned by Trinity. I'd like to focus my time today on the CERCLA claims. There are two reasons why the district court's summary judgment rulings should be reversed. First, a settlement does not have to specifically refer to CERCLA liability in order to give rise to contribution rights under Section 113. Instead, Trinity is entitled to contribution because the consent order resolved Trinity's liability to the state for response actions and response costs as those terms are defined under CERCLA. I was just going to ask you, what is a response action? A response action is defined in the covenant not to sue, which is the provision in the consent order that resolved Trinity's liability. And that is defined as response actions and response costs and injunctive release arising from the release or threatened release of hazardous substances. And a response action is defined separately from response actions that are arising under state law. In the consent order... So the consent order here covered a response action? Yes, absolutely, which is of course the very thing that Section 113 says must be resolved. And response actions are not tied in any way to state liability because the consent order says that all terms are to be defined here, unless specifically defined herein or defined under state law, but response actions are defined separately so they're not tied to state law. It's a broader definition than state law. So response actions are defined separately and they're defined in the consent order as relating to and addressing the release and threatened release of any hazardous substance. And as we discussed in our brief, that definition is substantively identical to the definition of response actions in CERCLA. And then additionally, the consent order says in Section 6 or Paragraph 6 that response actions include those maintained in the LRA and any other applicable environmental law or regulation. So again, this evinces an intent for response actions to be broader than state law response actions. And furthermore, there's a provision in the Pennsylvania Land Recycling Act that provides that compliance with its remediation standards will relieve a party of further remediation under CERCLA. So all of this is to say that it's very reasonable to presume that in the consent order, the department paid up, intended to resolve not only its state liabilities, but also its CERCLA. Can't this case, you argued, or from your standpoint, even resolve as a matter of statutory interpretation, at least as to the contribution piece we're talking about right now? 113F3B allows contribution after a party has, quote, resolved its liability for a response action, right? Correct. It doesn't say resolved its CERCLA liability. Absolutely. And if I understand the other side's position, and they can and certainly will speak to it, their suggestion is that that modifier really isn't necessary here because it's the CERCLA statute we're talking about. Is that what you understand their position to be? Well, our position is that this statute — Their position, not your position. I mean, focusing again on statutory interpretation, if Congress had wanted to limit this to CERCLA liability, they certainly could have said so, but they didn't. Correct. I believe that they could have added the word CERCLA, but they didn't. And so one argument could be made that CERCLA liability, the resolution of CERCLA liability, is not required at all. So that could be one decision. So one of the points that we have made is that one argument is that it's permissible that if a consent order resolves just state liability, that you could seek contribution for state liability. That's one position. That's a very broad proposition that I don't think — Am I correct, at least as a practical matter here, that the CERCLA liability really would be coextensive with the state action here? Yes, because response action under CERCLA law is coextensive. The HSCA under which the consent order was entered is sort of a mini CERCLA here. If you look at the definitions of response action under CERCLA and the definition of response action under the HSCA, the provisions are the same, and a lot of the provisions are the same. And, in fact, this court in Aguirre said that the contribution provisions of HSCA and CERCLA are identical. So there are a lot of provisions that are similar. If we reversed the district court on the contribution claim under 113F, would it be necessary for us to go on to the cost recovery claim? No, because the contribution under 113 is exclusive, so we would be able to recover contribution under 113 only. And that is our position. I think that we fit very, very neatly under the 113 claim, and so our 107 claim is an alternative claim. And we fit all the – Has the work been completed? No, not at all. Not at all. The Pennsylvania Department – When you say not at all, has it been started? No. No, there's no shovel in the ground at this stage. We're still in the planning stages. If we – again, if we reverse the district court's grant of summary judgment for CB&I, should – does that mean then granting your cross-motion and that it would establish CB&I's liability? My question really is, are there any factual questions out there? No, there are no factual questions. So the reversal of the summary judgment for CB&I then means you win? Correct. Of course, circle liability often occurs, as it does in this case, in two phases. And so this is the liability phase. And the relief that we are seeking is reversal of both motions for summary judgment. So what we're asking for is rendition of the liability phase in Trinity's favor so that we can then move on to the apportionment phase, which is phase two. The district court did find that there were some genuine issues of material fact on the RECWA request, did they not? On the – yes. Yes, the trial court did find a genuine issue of material fact on the harm factor. But we believe that the summary judgment record would enable you to be able to find, as a matter of law, on that issue. You may have answered this already, but – so you say your primary claim is under Section 113. But one of the arguments here is that you can recover under both. So if you were able to recover under 113, we don't need to resolve that issue. A party could recover under both 107 and 113. We actually don't move for recovery under both. We cited a law under Atlantic Research that says that – One or the other or both. Right, one or the other or both. But that's – the point that we're making in citing that law is that the district court was really without any authority at all to find that recovery was not permissible under either provision because of the law in footnote six of Atlantic Research that said that when parties find themselves in an awkward procedural position where you don't neatly fit into either category, that the position there should be that you determine which one you fit in and typically courts should analyze it and determine whether you fit in 107 or 113 or both. But I think that this court's analysis in a gear forecloses the ability to recover under both. So our position in this case is that the court should analyze it first under Section 113 and if it determines that recovery is not available under 113, then at a minimum, then grant recovery under 107. You've also sought injunctive relief here. I'm sorry? You have also sought injunctive relief. Yes, under RICRA. Yes, that's right. Before the district court. Why is an injunction necessary? Because under this court's decision in interfaith, there's no bright line rule that the department's intervention and participation is... In that case, wasn't there an issue of bad faith? Wasn't there an issue of dilatory tactics? That was not a part of the court's reasoning in interfaith. The court's reasoning in interfaith was that there was no... that it was purely as a matter of law that the court determined that there was no... that the state's remedy had already taken place and that the courts had really separated that conclusion and it was part of the legislative history and the analysis of the plain text of the statute. But you can only obtain injunctive relief here as may be necessary. That's the requisite, as may be necessary. Why is injunctive relief necessary here? After all, you've got an ongoing obligation to clean up the site, right? Yes, we do. And I presume you're not suggesting that you don't intend to fulfill that obligation such that it would be necessary for CB&I to do so. That's correct. And the cleanup has not begun at this point. We are still in the beginning phases. And this is not a situation in which we have one big mess. We have separate areas of concern, and we have experts that have determined that CB&I is liable for different specific areas of concern. And so that's one thing that makes this case unique in that CB&I could be charged with completing different areas of concern. And furthermore, this is not just a case of allocation of responsibility. That would enable CB&I to more efficiently rectify the harm by granting injunctive relief. And another thing is that CB&I has not answered our statutory arguments with regard to our injunctive relief. There's a provision in RCRA that provides for, with regard to the EPA, there are four separate provisions that preclude injunctive relief when the EPA is concerned, one of which governs consent orders. And then there are three parallel provisions that govern. I see that my time is up. Three separate provisions that govern state remedies, but curiously absent from that is the fourth provision that governs consent orders. And so that just shows that with regard to exactly what's happening here, that injunctive relief is available when the state pursues a consent order kind of a situation. Thank you. Thank you. We'll have you back on rebuttal as new. Ms. Devlin? Good morning, Your Honors. May it please the Court, my name is Kathleen Devlin. I'm here on behalf of Defendant Appellee, Chicago Bridge & Iron Company. I'd like to introduce out here with me Stephen Baker McKee, who is the counsel for Greenlease Holdings, our amicus in the case. Your Honors, not every environmental cleanup gives rise to CERCLA claims or any federal remedy. There's a fundamental presupposition in all of Trinity's arguments and its amicus arguments that there has to be some right to recovery under CERCLA or in the alternative RCRA. But as recognized in the Declaration of Policy in the Hazardous Sites Cleanup Act, HASCA, many of the hazardous sites in this commonwealth do not qualify for a cleanup under the Federal Superfund Act, such that an independent site cleanup program is necessary to address such cleanups. Could you address the question I asked Ms. New on statutory interpretation, 113F3B? Because I'm hung up on the fact that the statute doesn't say resolve its CERCLA liability. And that seems significant to me. Why would it? What is your position with respect to that language? Sure. That statutory provision requires the resolution of liability. The question you're asking is what liability? Our answer is CERCLA liability and only CERCLA liability. But it doesn't say that. I know that's your answer. Well, first of all, the language appears in CERCLA and it's referring to liability. So I do understand your argument to be that just because the words resolve this liability occurs under the huge rubric of the CERCLA statute, the reference is necessarily to CERCLA liability. That's where it starts, Your Honor, but that's not where it ends. Con Ed in the Second Circuit, W.R. Grace in the Second Circuit, have both specifically addressed and concluded that that can be only CERCLA liability, that that liability reference there can't be to just any old state environmental program. It is to CERCLA liability. If we disagree with the holdings of that case, we're creating a circuit split, right? May I just follow up, Judge? No, if I could just – you cited the Con Ed decision, and I grant you that that 2005 decision is still there. However, hasn't the Second Circuit kind of run away from that? It's backtracked some more recently in the W.R. Grace case, as I read it. Well, actually, the W.R. Grace case supports and agrees with the conclusion in Con Ed that CERCLA liability is the type of liability that has to be resolved there. And then there's a whole host of cases that we've cited in our brief that from circuit courts or from district courts around the country that reach the same conclusion, that that has to relate to CERCLA liability. There's a case called Asarco in the District of Arizona that illuminates in a lot of detail sort of why it says it has to be CERCLA liability there. Well, Judge Chigueras is correct. It would create a – we would create a circuit split. I'm sorry. No, no, no, and the cases, the district court cases you're talking about follow Con Ed, right? Nearly all of them do. I should point out, though, that in the Sixth Circuit we have ITT versus Borg-Warner, which completely independent of any of the Second Circuit jurisprudence, came to the exact same conclusion, that it has to be CERCLA liability that's being resolved. And there's some very basic reasons why that court and the courts that look at this among the district courts have reached that conclusion. It's the very nature of contribution under – well, generally, but also under Section 113. And this is referred to, actually, in Atlantic Research makes this – this is part of its discussion in the 113 section, and so does this court in AGIER Systems. The very essence of a contribution claim is that you are attempting to collect from someone else part of a common liability, part of a liability that you share with them and that you're then going to go after them and attempt to recover. So as a fundamental premise of a contribution claim and a contribution claim under 113F3B, you have to share what? CERCLA liability. Not just any old liability, not HASCA liability, but there has to be CERCLA liability there on your part before you can go after somebody else for the same. Congress not only knows very well how to say that, how to draft the statute that way, they have, if I recall, explicitly required a CERCLA action under Sections 106 and 107A. So they know how to limit to CERCLA liability or to a CERCLA action. Yes, certainly. Why would they not have done so here in 113F3B? Well, and we would argue they did, just without self-reference to the section. Well, one place they chose to use specifically the acronym and one place they didn't. That's not meaningful? Well, in F1, it's talking about during or following an action brought under 106 or 107. So, yes, because they're forming a premise there of what that is, they're referring to those other sections. In 113F3B, they're saying you have to resolve your liability. And based on, as I've just described, the very nature of what contribution is and how that's described in Atlantic Research and this Court's opinion in AGIR systems, that has to mean CERCLA liability. Now, let me address for a moment, because it came up a couple times during Appellant's argument, a fact question, and that is the work at this site and what's happened so far and what still needs to happen. Trinity, why is Trinity cleaning up this site? Trinity is cleaning up this site not because its Environmental Compliance Director woke up one day and said, boy, we've made a big mess here over quite a number of years. We better go tell DEP and EPA and get this figured out. That is not what happened here. Trinity was investigated and criminally prosecuted for running an illegal dump site on the property. And that resulted in a sentence to clean up both the south plant site where we are and the north plant site where our amicus green lease is involved. And what is the significance of that culpability here? The significance of that culpability is that it takes Trinity out of two things, any ability to articulate a 107 claim, but also because of the nature of the consent order that was entered in this case as a sentence, as part of the Mercer County Court of Common Pleas sentence in this matter. There is a consent order in place that does not mention CERCLA within its four corners, does not suggest any resolution of CERCLA liability anywhere within it, and cannot have CERCLA liability resolution implied into it. But getting back to the actual facts of what has happened at this site, the consent order was entered at the end of 2006. Council would have you believe that nothing has been happening since then. Well, practically everything that has had to occur in the consent order has occurred. Trinity has investigated this site extensively. Trinity has submitted its deliverables to DEP, which have, over the various points in time, obtained approval. There is one more deliverable that is awaiting approval, and that is the final cleanup plan, and that was submitted in February of 2013. Once that is approved, which is anticipated, as I understand it, imminently, the actual remediation work, which is digging in the dirt at the site and getting it cleaned up, and which generally only takes a couple months or so, is scheduled to begin this fall. After that, there is nothing left to happen. So to suggest that the remediation at this site has not begun is simply not correct. Your adversary pointed out, I think she pointed out, and maybe you can address this, isn't liability under the LRA really the same as under CERCLA? I'm really glad, Judge Chigars, that you brought that up, because the answer is unequivocally no. The Act 2, the Land Recycling Act, is the statute that creates the remediation standards under which one must remediate pursuant to the Hazardous Sites Cleanup Act. So this consent order is a good example of that. This is a Hazardous Sites Cleanup Act consent order. In fact, in its very caption, next to where it says Trinity Industries on the top left, it mentions two statutes that it is relating to, the Hazardous Sites Cleanup Act and the Land Recycling Act. It doesn't say CERCLA there, but in any event, there are a couple of provisions that were mentioned by counsel in the Land Recycling Act where Trinity is arguing would miraculously resolve their CERCLA liability. In particular, there is a section in the Land Recycling Act 501 that creates protection from liability under certain circumstances, and then it refers to a separate section, and you'll see this in the briefing, section 106 of Act 2, where it spells out which statutes you're protected from claims under if you do your remediation pursuant to Act 2. There are six state statutes referenced in that section 106, and it says these are the ones that will make you eligible for protection from liability under the statute. And then in a separate sentence in 106, and I encourage you to actually refer to that, it says, oh, and by the way, you can use Act 2 standards as ARARs for CERCLA cleanups. Now, that is a whole different animal than what is being suggested by counsel in terms of this 501-106 connection in Act 2. Is it really so different, though? I mean, is it really – it can't be likely that after this cleanup that the federal government is going to step in and file some sort of CERCLA, you know, ask them to do something different, right? We don't know, and that's the answer. It's not impossible, and that's the problem. The possibility that EPA could decide that 1,2-dioxane is a constituent of concern at this site that hasn't been identified before and impose all kinds of requirements relating to the investigation and remediation of that constituent of concern is an example of a way in which just because you're complying with ARARs, just because you're complying with Act 2 remediation standards, doesn't necessarily mean that EPA can't come in and impose all kinds of different or additional requirements. And when you are cleaning up under a state statute in a state-ordered and issued consent decree that only resolves state liability, as Trinity's does here, you run that risk. I'd like to briefly address – I mean, doesn't the – should we ignore the position of the amicus for the United States? Absolutely not. However, I'm a little surprised. I'm a little surprised, candidly, that the United States, as amicus, would want to stand next to Trinity who's trying to argue that a state court consent order that does not expressly resolve CERCLA liability in any way, shape, or form could possibly accomplish that, that DEP could accomplish that unilaterally and without any coordination or collaboration with the federal government. The very people you're going to say might come after your client have said that there ought to be a right to contribution here. The – that's right. An inconvenient fact. That's right. The fact that this state court consent decree has no reference to CERCLA and cannot possibly resolve CERCLA liability is meaningful in the sense that unless there's some – Section 104 of CERCLA actually specifies situations in which the federal government and state government can coordinate so that the state government, that DEP here, could have allocated to it some of the enforcement authority of the federal government in terms of CERCLA claims. That did not happen here. So the bottom line is that there is nothing in this consent order that can possibly resolve the CERCLA liability of Trinity in a manner that would enable it to have a 113 claim. Can I ask you – maybe switch gears for one second. Section 107A, I notice that there's a requirement that cleanup costs be undertaken voluntarily for liability under 107A. Where does that come from? It comes from Atlantic Research, Your Honor. It comes from Atlantic Research's observation that the word incurred must be read and interpreted in accordance with its meaning, its ordinary meaning, which is to say the undertaking upon oneself of an obligation. And so that is how Atlantic Research interpreted that. In fact, Atlantic Research, affirming the Eighth Circuit, specifically affirmed a holding that related to a voluntary remediator undertaking a cleanup under 107. Are you familiar with what the Seventh Circuit has said in Bernstein v. Packer? Yes. In fact, Bernstein criticizes that voluntary-involuntary distinction. It certainly does. In fact, it completely flips the spin on voluntary. It absolutely does, Your Honor. But when you look at Bernstein, the underpinnings of that view were it didn't think that Atlantic Research said what it actually says. And it also just pointed out that voluntary is not a word that appears in the statute. Now, we have the DuPont case that came after Atlantic Research in which the court concluded that a voluntary remediator would have a 107 claim and thought about it in terms of the voluntary-compelled distinction. We also have the AGIER systems case in which a voluntary group of remediators was entitled to a 107 claim. So while, of course, cases like Bernstein criticize it. So you don't agree then with the proposition as articulated in Bernstein that costs incurred voluntarily are recoverable only by way of Section 107A4B, different from saying, quote, only voluntarily incurred costs are recoverable by way of the 107. I agree. I understand that Bernstein makes that distinction. But it's a distinction without a difference for purposes of this case because Atlantic Research and DuPont and AGIER systems all involved voluntary remediators, so the holdings related to the voluntary remediators. Now, I would like to point out one additional thing relating to the RCRA injunctive relief because it was brought up when Appellant was arguing. The situation here, as I've described it, does not give rise to injunctive relief under RCRA under any circumstance. The Supreme Court in Megrig versus – I see my time has expired. You can finish your statement. The Supreme Court in Megrig versus KFC made very clear that RCRA injunctive relief is not intended to supplant a cost recovery and contribution type scheme, as you see under CERCLA or as you see under the HASCA. And Trinity is attempting to do exactly what the Supreme Court in Megrig, and also there's a very good discussion of it in 87th Street Owners, the Southern District of New York in 2002, said you can't do with a RCRA injunction. Under the circumstances here, there's a remediation plan in place. There is no unabated contamination that is imminently threatening the environment. Since 2006, there has been an orderly disposition and remediation, and in those circumstances, you cannot use and invoke RCRA to come in and attempt to create new relief in that situation. Thank you very much. Thank you. Devlin is new. You may have rebuttal. First of all, I'd like to address the consent order and whether or not it actually resolved relief that was related to CERCLA and whether or not it would be possible for the state to thereafter pursue relief. And I think that what opposing counsel referred to is whether or not the EPA could thereafter come back and pursue relief under CERCLA. And I just want to point out that was also an error that the district court made, and we just want to remember that the statute also allows the state to pursue its own CERCLA remedies and that Section 113 also allows for a partial resolution of remedies. So to the extent that the question is, well, does this consent order resolve EPA CERCLA liability, that's not the question. The question is, does it resolve PADEP or the state's CERCLA liability? And the answer is absolutely yes. And any question of whether or not the EPA could thereafter pursue its remedies is completely irrelevant. The question is, did the state resolve its liability? And the answer is yes. And then turning to the 107 issue, and I think, Judge Sigars, you asked the question of where did the voluntariness requirement come from. And in a lot of ways it came from the Atlantic Research sentence that said, it was in footnote 6 of that decision, and it said costs incurred voluntarily are recoverable only by way of 107. And a lot of cases took that sentence too far. And as we pointed out on our brief, there's a logical error to that. When you say costs incurred voluntarily are only recoverable by way of 107, that's not the same thing as saying that costs incurred involuntarily are never recoverable by way of 107. Well, that's essentially the Seventh Circuit's point with respect to the grammar of that statement, isn't it? Right, right. But it's a rule of logic. The placement of the word only is game, set, and match for what that means. Correct. And we agree with the Seventh Circuit and Bernstein. We think that Bernstein got that right. And so we agree with everything that the court in Bernstein said. For all those reasons, the voluntariness requirement is not in the text of 107 and should not be read into the requirement. You know, the policy, you know, furthermore, I think that it is interesting who showed up to write an amicus brief. I think that if our interpretation of the consent order was incorrect, PAYDEP would have been here and would have been writing an amicus brief and would have been disagreeing with our interpretation and the fact that it had resolved its circle liability and it's not here, and who is here? It's the United States. You both find that interesting. I agree. I agree. The United States makes a good oh, I see my time is up. Thank you very much. Thank you very much. Counsel, it's a very interesting case. We thank you both for excellent arguments, and we will take the case under advisement. Thank you.